■ In the Matter of TRU-TEMP INDUSTRIAL INSULATION COMPANY, INC., et al., Petitioners, v THOMAS F. HARTNETT, as Commissioner of Labor of the State of New York, Respondent. (Proceeding No. 1.) In the Matter of TALCO ASBESTOS REMOVAL, INC., Petitioner, v THOMAS F. HARTNETT, as Commissioner of Labor of the State of New York, Respondent. (Proceeding No. 2.)—Weiss, J. Proceedings pursuant to CPLR article 78 (initi-

ated in this court pursuant to Labor Law §§ 220 and 220-b) to review two determinations of respondent which found, *inter alia,* that petitioners had underpaid certain of their employees.

Petitioner Talco Asbestos Removal, Inc. (hereinafter Talco) entered into a contract with the St. Regis Falls Central School Board to remove asbestos and reinsulate mechanical systems at St. Regis Falls Central School in Franklin County. Petitioner Tru-Temp Industrial Insulation Company, Inc. (hereinafter Tru-Temp) was the subcontractor on the reinsulation portion of the work. Following audits, both Tru-Temp and Talco were charged with violations of Labor Law § 220 (3) involving wage payments, prevailing wages and supplements, and related job classifications. Respondent made a June 24, 1988 determination and order following the report of a Hearing Officer after a single consolidated hearing which found that Talco had failed to pay prevailing wages and supplements to 22 employees within the laborer and asbestos worker classifications under Labor Law § 220 (3).* Talco then commenced a proceeding (proceeding No. 2) arguing that respondent's decision was in error.

Talco's principle challenge is that respondent's determination was not supported by substantial evidence and was arbitrary and capricious. We disagree. Witnesses testified to their opinions concerning the applicability of the prevailing wage rate schedule in the locality of this project. The Hearing Officer and respondent credited the testimony of Samuel Agati, who was subpoenaed by Talco as an adverse witness. Agati was the business agent of the local laborers' union and his job included classification of work in the area. Agati testified that all work on reinsulation projects in a containment area was that of asbestos workers, not laborers, that he had consulted with officers of the international union representing laborers, had read an agreement known as the "International Agreement", and had also inquired into the practice

---

* The Hearing Officer found all of the work performed by employees within the contaminated area to be the work of an asbestos worker rather than that of a laborer. Asbestos workers, in addition to a higher wage rate, receive time and one half for all overtime work exceeding seven hours in one day and double time for all work on weekends. The Hearing Officer also found that Pierre Diotte, a foreman, should be paid at the asbestos worker rate for all of the hours he worked. Finally, the Hearing Officer did not consider record-keeping and other nonwage violations because the notice of hearing did not specify such violations. Although respondent rejected the Hearing Officer's conclusion, no definitive finding of violations was made. The issue is therefore academic.

of other local laborers' unions. Although Agati conceded that in an earlier prevailing wage rate case he had testified that laborers do perform work in a containment area, Agati explained that when, as here, the work consisted of stripping and reinsulation of a mechanical system, the International Agreement applied and the bagging, dropping, tagging and removal of asbestos outside a containment area was the work of asbestos workers. In addition, the Hearing Officer took official notice of the definition of an asbestos worker found in the Dictionary of Occupational Titles published by the Federal Department of Labor, Employment and Training Administration.

The law is well settled that credibility determinations made by an Administrative Hearing Officer are unassailable and the testimony thus credited provides substantial evidence for the determination under review (*Matter of Berenhaus v Ward,* 70 NY2d 436, 443). The reviewing court may not weigh the evidence or reject the choice of which testimony should be accepted by the Hearing Officer where the evidence is conflicting and room for choice exists (*supra,* at 443, 444; *see, Matter of Stork Rest. v Boland,* 282 NY 256, 267). Put another way, questions of credibility are to be determined solely by the Hearing Officer (*Matter of Reisner v Board of Regents,* 142 AD2d 22, 28). In this case, we agree that of all the testimony, Agati's was the most relevant and credible evidence offered.

We further find unpersuasive Talco's argument that it was not bound by the prevailing wage rate schedule because the schedule had not been filed with respondent by St. Regis Falls Central School Board. Similarly, Talco's contention that the local union wage scales were inappropriate because only a small percentage of asbestos workers in the locality were unionized is without merit. Nor do we find error in the determination that Diotte, the Talco foreman, should have been paid asbestos workers' wages. Because only one third of his time was supervisory, he remained a laborer (*see, Matter of Tenalp Constr. Corp. v Roberts,* 141 AD2d 81, 85-87). Finally, Talco's challenge to the use of the prevailing wage rate schedule made more than one year after it had become binding was untimely (*see,* CPLR 217).

We turn next to the other proceeding (proceeding No. 1), which was commenced jointly by Talco and Tru-Temp and which challenged an order and determination of respondent dated March 16, 1988 made upon the same record as in the other proceeding. It is uncontroverted that Tru-Temp utilized incorrect overtime practices by failing to pay overtime speci-

fied in the prevailing wage rate schedule and that its foremen were covered workers. The prevailing wage and classification statement, while not physically received by Tru-Temp, was a part of the contract and was a final, binding determination at that time. Tru-Temp's delay in obtaining a written copy and its reliance upon a telephone inquiry to the general contractor do not extend the Statute of Limitations. The record shows that two months after the job's completion, Tru-Temp received notice on November 9, 1986 that prevailing wage rate requirements had been violated. This challenge, made one year later in November 1987 at the hearing before the Hearing Officer, is therefore untimely (see, A. J. Cerasaro, Inc. v Ross, 94 AD2d 943, 944, affd 60 NY2d 946; see also, Matter of North Country Installers v Commissioner of Labor for State of N. Y., 135 AD2d 1039, 1040).

Tru-Temp further contends that it should be credited with the cost of health insurance benefits provided to one of the project's employees. Because the benefit was not reflected in Tru-Temp's certified payroll, respondent's rejection of the contention was not an abuse of discretion.

Finally, we find support for the determination that Tru-Temp's violations were willful. Tru-Temp's president testified that he had never reviewed the prevailing wage rates attached to Talco's contract, never paid the overtime rates contained therein, never examined the Labor Law and had performed 110 public works projects before. Tru-Temp was an experienced contractor which should have known the prevailing wage rates for this project. Evaluation of evidence and determination of credibility lie solely within respondent's province and must be confirmed when supported by substantial evidence (see, Matter of Berenhaus v Ward, 70 NY2d 436, 443, supra; 300 Gramatan Ave. Assocs. v State Div. of Human Rights, 45 NY2d 176, 180).

Determinations confirmed and petitions dismissed, without costs. Casey, J. P., Weiss, Levine, Mercure and Harvey, JJ., concur.