■ In the Matter of NAFTILOS PAINTING AND SANDBLASTING, INC., Petitioner, v THOMAS F. HARTNETT, as Commissioner of Labor, Respondent. (And Another Related Proceeding.)—Mahoney, P. J. Proceedings pursuant to CPLR article 78 (initiated in this court pursuant to Labor Law §§ 200 and 220-b) to review two determinations of respondent which, *inter alia,* found that petitioners failed to pay prevailing wages and supplements.

These two related proceedings, in which petitioners seek review of respondent's determinations that petitioners willfully failed to pay prevailing wages and supplements to workers on Department of Transportation (hereinafter DOT) bridge projects, were originally remitted to respondent by this court for clarification of the methodology and calculations utilized in deciding the actual amounts underpaid the workers on the projects at issue (167 AD2d 700). Pursuant to our remittal, respondent issued new orders and determinations of which petitioners now seek review.

Reviewing the facts, we note that, in December 1984, Penn-

Crete Construction Corporation contracted with DOT to rehabilitate certain bridges along Interstate Routes 84 and 684 in Putnam and Westchester Counties. Penn-Crete subcontracted with petitioner Naftilos Painting and Sandblasting, Inc. to paint the bridges. In April 1985, petitioner Nick Margaritis, doing business as Atlas Maintenance Company, contracted with DOT to paint bridges on Interstate Route 684 and State Route 22 in Putnam County. Margaritis' wife owned Naftilos Painting and Sandblasting and Margaritis took part in the supervision of both projects, employing essentially the same employees therefor.

The contracts for both projects required that employees be paid the prevailing wage in the locality of each project as established in collective bargaining agreements between employers and unions in the project area which applied to at least 30% of workers in the locality (see, Labor Law § 220 [5]). A prevailing wage rate schedule was thus contained in both contracts setting forth the wages and supplements to be paid on each project to different classifications of workers, including laborers and various classifications of painters. On August 28, 1985, the Department of Labor's Bureau of Public Works (hereinafter BPW) received a complaint from a worker on the Naftilos project that he had been paid below the prevailing wage rate. A subsequent BPW investigation disclosed underpayments to employees on the Naftilos project of $21,894.48. The Department of Labor held a hearing after which the Hearing Officer found that Naftilos had underpaid its employees by $21,561.67 and ordered payment to respondent on behalf of the employees in that amount plus interest and penalty. Naftilos was also found to have willfully violated the Labor Law by its underpayments (see, Labor Law § 220-b [3] [b]).

An investigation was also commenced to determine whether Atlas Maintenance had underpaid workers on its project, resulting in a finding of $28,909.27 in underpayments. After a hearing, a Hearing Officer determined that Atlas had willfully underpaid its employees $31,407.26, for which it would be liable together with interest and penalty. Respondent adopted the Hearing Officer's recommendation in both matters and these related proceedings ensued, followed by our remittal and the aforementioned clarifications.

We now find that the determinations should be confirmed and the petitions dismissed. We reject petitioners' initial argument that neither determination was supported by substantial evidence because they relied on wage rate schedules

supplied by respondent which had expired. Cover letters accompanying the schedules informed petitioners of wage rate expirations and that, should a project go beyond those dates, a new determination should be negotiated. In any event, petitioners were statutorily required to pay the "prevailing rate of wage" (Labor Law § 220 [3], [5]) and any alleged failure on respondent's part to supply wage rate schedules cannot relieve a petitioner from paying the prevailing wage rate to which the worker is statutorily entitled *(see, Matter of Tru-Temp Indus. Insulation Co. v Hartnett,* 155 AD2d 820, 822; *Matter of Twin State CCS Corp. v Roberts,* 125 AD2d 18, 20, *revd on other grounds* 72 NY2d 897).

We likewise reject petitioners' contention that they cannot be held liable for wage rates set in collective bargaining agreements to which they are not parties. Statutory reliance on collective bargaining agreements has been accepted by this court as "reasonably necessary to the accomplishment of the Legislature's mandate to ensure that workers receive [the] prevailing wage" *(Matter of General Elec. Co. v New York State Dept. of Labor,* 154 AD2d 117, 121, *affd* 76 NY2d 946). We also reject petitioners' argument that the placing of all workers in the painter category was not supported by substantial evidence in the record. The collective bargaining agreements stated that painters did all their own work and we find that the evidence therefrom fully supports the determination, one within respondent's expertise *(see, Matter of General Elec. Co. v New York State Dept. of Labor, supra; Matter of Nelson's Lamp Lighters v Roberts,* 136 AD2d 810, 811, *lv denied* 73 NY2d 702).

Next, we find the Hearing Officer's findings of underpayment amounts, the methodology and calculations as clarified by respondent, and respondent's determinations thereon to be amply supported by the record. "The law is well settled that credibility determinations made by an Administrative Hearing Officer are unassailable and the testimony thus credited provides substantial evidence for the determination under review *(Matter of Berenhaus v Ward,* 70 NY2d 436, 443). The reviewing court may not weigh the evidence or reject the choice of which testimony should be accepted by the Hearing Officer where the evidence is conflicting and room for choice exists *(supra,* at 443, 444; *see, Matter of Stork Rest. v Boland,* 282 NY 256, 267). Put another way, questions of credibility are to be determined solely by the Hearing Officer *(Matter of Reisner v Board of Regents,* 142 AD2d 22, 28)." *(Matter of Tru-Temp Indus. Insulation Co. v Hartnett,* 155 AD2d 820, 822, *supra.)*

Therefore, the contemporaneous logs kept by workers on both projects and found by the Hearing Officer and respondent to be the most credible evidence of the time worked by the projects' employees, coupled with the engineers' daily project diary, provided sufficient basis in the record to support a finding of underpayments. We further find that respondent's determinations clarifying the methodology and calculations employed in determining the amount of each underpayment sufficiently complied with our request upon remittal. We note that the "charts" accompanying respondent's determinations are no more than an illustration of the methodology and calculations undertaken to determine the underpayments. As such, they are not additions to the record.

We have examined petitioners' further contentions and find them without sufficient merit to warrant the relief sought in their petitions, including petitioners' argument that the findings of willfulness were not supported by substantial evidence (see, Matter of Mid-Hudson Pam Corp. v Hartnett, 156 AD2d 818, 821; Matter of Green Is. Constr. Co. v Roberts, 139 AD2d 907, 908-909).

Determinations confirmed, and petitions dismissed, without costs. Mahoney, P. J., Casey, Levine and Mercure, JJ., concur.